**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

BEAU LEE LEWIS,
            *Defendant-Appellant.*

No. 05-10692

D.C. No.
CR-04-00217-MJJ

OPINION

Appeal from the United States District Court
for the Northern District of California
Martin J. Jenkins, District Judge, Presiding

Argued and Submitted
August 14, 2007—San Francisco, California

Filed March 13, 2008

Before: Diarmuid F. O'Scannlain, Michael Daly Hawkins,
and Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Wardlaw;
Dissent by Judge O'Scannlain

2415

## COUNSEL

Dean D. Paik, San Francisco, California, for the defendant-appellant.

Matthew J. McKeown, Assistant Attorney General, John Smeltzer, Attorney, U.S. Department of Justice, Robert Anderson, Attorney, U.S. Department of Justice and Todd Aagaard, Attorney, U.S. Department of Justice, Washington, D.C., for the plaintiff-appellee.

---

## OPINION

WARDLAW, Circuit Judge:

Beau Lee Lewis appeals the district court's decision to dismiss without prejudice his indictment for violation of the Speedy Trial Act ("STA"), 18 U.S.C. § 3162(a)(2). On Lewis's prior appeal, we found that one discrete period of pretrial delay had violated the STA, did not reach the other asserted STA violations, and remanded for a determination of whether the dismissal of the indictment should be with or without prejudice. *United States v. Lewis*, 349 F.3d 1116, 1121 (9th Cir. 2003) ("*Lewis I*"). Lewis correctly contends that the district court misconstrued the scope of our mandate by considering only the one period of delay we found to violate the STA before dismissing the indictment without prejudice.

The government re-indicted Lewis and the case proceeded to trial for a second time. Lewis was again convicted. Lewis appeals this second conviction based on various errors he asserts the district court committed during his second trial. We do not reach these various assertions of trial error because, upon remand, the district court should consider the effect of all of the improper periods of pretrial delay. Upon

thorough consideration and review, the district court may very well determine that Lewis's indictment should be dismissed with prejudice, obviating the need for us to consider the remaining contentions of error. We have jurisdiction to review this appeal pursuant to 28 U.S.C. § 1291, and we reverse and remand.

## I.   BACKGROUND

A.   The Importation of Protected Reptiles

In 1994, the Fish and Wildlife Service constructed a faux-wildlife importation and wholesale business called "PacRim" as part of an elaborate sting aimed at trapping prominent Malaysian commercial wildlife dealer, Keng Liang "Anson" Wong. Spearheading the investigation for the government was Special Agent George Morrison, operating under the alias "George Ross." To establish a rapport with Wong, Morrison, through the PacRim shell, purchased several legal shipments of reptiles for importation to the United States.

The government, however, had no need for the accumulating reptiles purchased from Wong and sought a purchaser for the animals. To locate a buyer, PacRim took out an advertisement in the appropriately named *Reptiles* magazine. Beau Lee Lewis, an eighteen year old aspiring herpetologist, read the announcement and contacted Morrison in late 1995 to obtain a price list for the reptiles for sale.

Over the next three years, Morrison and Lewis spoke frequently both over the phone and during Morrison's visits to the home of Lewis's parents. Their relationship at first centered around the legal purchase and sale of reptiles. This shifted, however, after Lewis questioned Morrison about acquiring federally-protected gray's monitor lizards. Gray's monitors, as well as the other reptiles involved here, are protected under the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES"), 27 U.S.T.

1087, T.I.A.S. No. 8249, as well as the Endangered Species Act, 16 U.S.C. §§ 1531-1544 and the Lacey Act, 16 U.S.C. §§ 3771-3378. Nearly three months later, Lewis let Morrison know he had been in contact with Wong and was importing reptiles through Malaysia. What began as the government's effort to unload legal reptiles onto Lewis thus mutated into a conspiracy to violate federal wildlife and importation law involving Lewis, Morrison and Wong.

Lewis and Morrison set about devising plans whereby Wong could directly send the protected reptiles to Lewis. After consulting with other local reptile traders, who eventually were named co-conspirators in the scheme, the pair concluded that transport through Federal Express ("FedEx") provided the most efficient route. From December of 1997 through August of 1998, Wong shipped six FedEx packages to Lewis containing scores of protected wildlife.

The sting concluded in September of 1998 when Morrison convinced a reluctant Wong to travel to Mexico City for a meeting. Mexican officials arrested Wong upon his arrival and incarcerated him pending extradition to the United States.

Lewis was indicted on July 8, 1998, and arraigned on October 1, 1998.

### B.   Delays Before the First Trial

Lewis's first trial began on February 20, 2001 — two years, four months, and nineteen days after his initial arraignment. This total period of delay accumulated through a series of smaller distinct periods of delay, nearly all of which occurred over Lewis's objection.

At Lewis's October 1998 arraignment, his first counsel, Peter Robinson, requested that the case be declared complex and sought additional time for trial preparation. At the same hearing, the government alerted the district court that "the

main defendant, Mr. Wong, has been apprehended in Mexico. He is represented by a U.S. attorney. He may waive extradition, so we may have him back here in the not too distant future." The court granted the continuance on the basis of complexity, a ground that is excluded from inclusion in the seventy-day time-frame in which a defendant's trial must begin under the STA. *See* 18 U.S.C. § 3161(h)(8).

On February 11, 1999, Lewis notified the district court that he was ready for trial, and requested his trial date to be set within the seventy days mandated by the STA. 18 U.S.C. § 3161(c)(1). Wong, however, still had not been extradited from Mexico. The government asked for an additional thirty days to pursue that effort and the district court granted the request over Lewis's objection. The STA also excludes from the seventy day time-frame a reasonable period of delay when a defendant is joined for trial with a co-defendant. *See* 18 U.S.C. § 3161(h)(7).

A month later, on March 18, 1999, Lewis asked the court to set April 19, 1999 as the trial date. Government counsel objected to the date, stating to the court that he "can't predict how quickly [the officials handling Wong's extradition] are going to move. I can only indicate to the court that they have been very quick in resolving the status of his extraditability to this country." The court set June 7, 1999 as the trial date, with pre-trial motions to be heard on May 6, 1999.

On April 15, 1999, the government filed another motion for continuance on the basis that Wong had still not been extradited. Lewis objected and argued that the government had shown repeated inaccuracy as to the speed with which Wong could be extradited. To jump-start the trial, Lewis informed the court that he would be willing to stipulate to essentially all the complex factual and legal issues related to Wong so that it would be unnecessary to try the two defendants together.

At the same time, the government filed an additional motion requesting permission to present Morrison's testimony non-sequentially. The STA excludes delay "resulting from any pretrial motion." 18 U.S.C. § 3161(h)(1)(F). This motion would remain pending for twenty months.

During a May 6, 1999 hearing, the court granted the government's motion for continuance, and re-scheduled the trial for September 20, 1999. The court granted this motion on the bases of complexity and Wong's continuing absence.

The government filed a second superseding indictment on June 14, 1999, joining two co-conspirators as defendants. The addition of these co-defendants resulted in an additional delay of the trial, and on August 11, 1999, the court granted a further continuation on that basis. The court granted this continuation over the objection of Lewis's counsel, who informed the court that he would be moving on August 1, 2000 to the Netherlands to begin work with the International War Crimes Tribunal. Further delay, he warned the court, might force him to withdraw as counsel.

The court at this time also declined to hear an oral motion by Lewis to sever his trial from his co-defendants, requesting written motion papers instead. On December 27, 1999, Lewis complied by filing a written motion to sever. The district court rejected the motion and re-scheduled the trial for July 3, 2000.

That following May, one of the co-defendants submitted a motion to continue the trial for sixty days. Lewis objected and renewed his motion to sever, in part because of his counsel's impending move to Europe. On June 8, 2000, the court heard the motions, denied Lewis's motion to sever and granted the continuance. Lewis's counsel withdrew from the case. Without the years of background and preparation possessed by the first counsel, Lewis's new attorney requested additional time

to organize himself for trial. The new trial date was set for January 22, 2001.

The government successfully extradited Wong on August 30, 2000. He subsequently pleaded guilty and agreed to cooperate with the government against Lewis.

Lewis moved to dismiss the indictments due to violations of the STA. The court denied the motion, finding that only twenty eight days between the arraignment and the motion were not properly excludable under the statute. Of the two years Lewis spent waiting for trial to that point, the court found twenty months excludable under the statute due to the government's pending motion to allow Agent Morrison to testify non-sequentially.

## C.   The First Trial

The first trial began on February 20, 2001. Lewis was convicted on various counts and sentenced to a total of thirty-six months incarceration and three years supervised release.

## D.   The First Appeal

Lewis appealed his conviction on multiple grounds, including the district court's denial of his motion to dismiss the indictment for violation of the STA. Lewis argued that the court improperly excluded periods of time from the STA calculus. Among other periods, Lewis directed our attention to a 117-day period between January 13 and May 9, 2000 when the pendency of the government's motion to allow Morrison to testify non-sequentially purportedly lawfully delayed the trial.

We found that the 117-day period *alone* was sufficient to hold that Lewis's rights under the STA had been violated. *Lewis I*, 349 F.3d at 1121. We reasoned that the continuation of the trial date delayed the resolution of the motion, rather

than the motion having delayed the commencement of the trial. For that reason, exclusion under the STA was improper. *Id.* ("[W]here it is clear that the delay in the trial caused the delay in the hearing, rather than the other way around, *and* where the defendant repeatedly asked the court to set the case for trial and was otherwise ready to proceed to trial, the government's pending (and relatively unimportant) pretrial motion could not serve as a basis for exclusion . . . .") (emphasis in original).

We expressly did not consider any other period of excluded time because the 117-day period was sufficient to find a violation of the STA. *Id.* at 1122 n.9 ("Lewis brings other Speedy Trial Act challenges as well, which, because we reverse on this § 3161(h)(1)(F) ground, we do not reach."). We vacated Lewis's sentence, dismissed his indictment and remanded the case to the district court to determine whether dismissal should be with or without prejudice. *Id.* at 1121-22. Before doing so, we noted that the "delay had substantial prejudicial effect on the defendant, who was, as a result, deprived of his right to be represented by counsel of his choice." *Id.* at 1121 n.8.

E.   The District Court Dismisses Without Prejudice

On April 29, 2004, upon remand, the district court considered whether the STA violations before Lewis's first trial required his indictment to be dismissed with or without prejudice. The STA enumerates factors for a court to consider in making such a determination. 18 U.S.C. § 3162(a)(2). These factors include "among others" the "seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." *Id.*

After considering argument from counsel, the district court weighed these factors. In assessing the degree of prejudice

suffered by Lewis, the court determined the period of delay it should consider and concluded the amount of time to be "117 days at the outside" corresponding to the period we found sufficient to find a STA violation. Lewis's counsel requested the court to "make a finding, a specific finding as to the other grounds that [he had] raised about excludable delay" including other periods that this court had not reached in our earlier decision. The court declined to do so, stating that the "Ninth Circuit made its decision. That's the record. I'm not looking behind that." The district court dismissed the indictment without prejudice.

## F.   The Second Trial

With the indictment being dismissed without prejudice, the government then sought to re-indict Lewis. On June 24, 2004, a federal grand jury returned a second indictment against Lewis. This indictment was superseded on October 21, 2004, adding allegations related to sentencing.

After the case proceeded to a second trial, the jury found Lewis guilty on six counts. The district court sentenced him to twenty-three months in prison.

## II.   DISCUSSION

[1] An STA violation requires the dismissal of the indictment upon the defendant's motion. 18 U.S.C. § 3162(a)(2). Whether to dismiss with or without prejudice is left to the "guided discretion of the district court." *United States v. Taylor*, 487 U.S. 326, 334-35 (1988). The statute does not prefer one remedy to the other. *Id.* The STA enumerates three factors, "among others," that must be considered in deciding whether to dismiss with or without prejudice: "seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2). The Supreme Court has held

that by use of the phrase "among others," Congress intended prejudice to the defendant to be a fourth factor weighed by the district court. *Taylor*, 487 U.S. at 333-34. We have likewise recognized that "the sheer length of the period involved" can weigh toward a dismissal with prejudice. *United States v. Clymer*, 25 F.3d 824, 831-32 (9th Cir. 1994).

**[2]** The district court erred by incorrectly reading *Lewis I* as limiting its review to the discrete 117-day period that we found sufficient to violate the STA. On Lewis's first appeal, we did not find it necessary to reach the other periods of delay that Lewis argued were unexcludable under the STA. *Lewis I* at 1122 n.9. Lewis, however, was entitled upon remand to a full consideration of all periods of nonexcludable delay during the district court's prejudice determination. The district court's misconstruction of our mandate led to a failure to consider all improperly excluded periods, which, in turn, prevented it from accurately and carefully weighing the statutory factors provided by Congress.[1] *See Taylor*, 487 U.S. at 336 ("Where, as here, Congress has declared that a decision will be governed by consideration of particular factors, a district court must carefully consider those factors as applied to the particular case and, whatever its decision, clearly articulate their effect in order to permit meaningful appellate review."). Necessarily, if the district court finds other periods to be unexcludable, the STA calculus will change. This could very well tilt the balance toward dismissing the indictment with prejudice. If the district court determines the other periods to be excludable, it should make clear findings as to the statutory

---

[1]Our respected colleague in his dissent needlessly erects a strawman merely to knock it down. The dissenting opinion mischaracterizes our holding to embrace a statutory construction requiring a "calculation of the precise number of days by which the Act was violated." To the contrary, all we hold was that by its constrained reading of our prior holding in this case, the district court failed to consider the prejudice flowing from other periods of pre-trial delay, contrary to Supreme Court precedent. *See Taylor*, 487 U.S. at 333-34 ("[T]here is little doubt that Congress intended [prejudice] to be relevant for a district court's consideration.")

bases for their exclusion to enable us to conduct meaningful appellate review.

## III. CONCLUSION

We remand to the district court to review the entirety of the pre-trial delay suffered by Lewis and to make specific findings as to which periods are excludable under the STA. In our view, these additional periods of delay may have exacerbated the prejudice to Lewis, only one aspect of which — loss of original trial counsel — we mentioned in *Lewis I*. Only after making clear and specific findings as to excludability may the district court then turn to weighing the statutory factors in assessing whether to dismiss the second indictment with or without prejudice. If the district court again dismisses the indictment without prejudice, we will consider Lewis's other claims of error. We therefore retain jurisdiction over this appeal.

**REVERSED and REMANDED.**

---

O'SCANNLAIN, Circuit Judge, dissenting:

After acknowledging that a Speedy Trial Act violation had occurred, the trial judge quite properly dismissed the indictment against Beau Lee Lewis without prejudice, weighing each factor the Act requires. Today, the court holds that the district court abused its discretion because it failed to calculate the precise number of days by which the Act was violated and that such failure "prevented it from accurately and carefully weighing the statutory factors provided by Congress." Maj. Op. at 2426. Because I do not believe that any such requirement is imposed by the Act or by any of our precedents I respectfully dissent.

I

The Speedy Trial Act requires that a defendant's trial begin within 70 days of his indictment, or the date of his first appearance before a judicial officer, whichever is later. 18 U.S.C. § 3161(c). Other provisions of the Act, however, provide exceptions under which certain delays may be excluded from this 70-day limit in appropriate circumstances. *Id.* § 3161(h). As the majority notes, in this case over two-and-a-half years elapsed between Lewis's indictment and the date of his first trial, in which he was convicted. Lewis appealed, and in *United States v. Lewis*, 349 F.3d 1116 (9th Cir. 2003) (per curiam) ("*Lewis I*"), we reversed his convictions, holding that the Speedy Trial Act had been violated because at least 117 days between Lewis's indictment and his trial were not excludable under the Act. We remanded to the district court to determine whether to dismiss Lewis's indictment with or without prejudice. *Id.* at 1121-22.

In *Lewis I*, Lewis had argued that the district court erred in finding that multiple portions of the delay between his indictment and trial were excludable under the Act. We held that the district court erred in finding at least one of these periods excludable—the 117 days between January 13, 2000 and May 9, 2000, when the government's pending motion to present a witness's testimony non-sequentially was the sole basis for delay. *Id.* at 1120. As a consequence, we declined to reach the question of whether any other periods were excludable because such period alone was sufficient to establish a Speedy Trial Act violation. *Id.* at 1122 n.9.

In this appeal, Lewis argues that on remand the district court was *required* to reach the other period contentions to determine whether to dismiss the indictment against him with or without prejudice under the guidance the Act provides, *see* 18 U.S.C. § 3162(a)(2), and the majority agrees. Such a conclusion not only contravenes the statute's plain text, I suggest

it transforms the statutory standard of review from abuse of discretion to *de novo*.

## II

When a Speedy Trial Act violation has occurred, the court must determine whether to dismiss the indictment against the defendant with or without prejudice by "consider[ing], among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2). I agree with the majority that the Supreme Court has explained that Congress intended "the presence or absence of prejudice to the defendant" to be a fourth factor relevant to this determination. *United States v. Taylor*, 487 U.S. 326, 334 (1988). But the Act gives "neither remedy . . . priority," *id.* at 335, and Congress has left the decision to dismiss with or without prejudice "*to the guided discretion of the district court*," *id.* (emphasis added).

While § 3162(a)(2) provides a non-exclusive list of factors the district court may consider, it contains no express requirement that the court calculate the precise number of days that were or were not excludable under the Act before deciding whether to dismiss with or without prejudice, nor do our precedents set forth any such rule. The majority attempts to bridge this gap by noting that we have "recognized that 'the sheer length of the period involved' *can* weigh toward a dismissal with prejudice." Maj. Op. at 2426 (quoting *United States v. Clymer*, 25 F.3d 824, 831-32 (9th Cir. 1994)) (emphasis added). This observation is, of course, unassailable. A longer period of delay will weigh in favor of dismissal with prejudice in many, if not all cases. Yet § 3162(a)(2) enumerates other factors which a district court must consider, and our prior cases do not portend the rule the majority announces today, that a district court's "failure to consider all improperly

excluded periods" is enough to constitute an abuse of discretion in applying § 3162(a)(2). Maj. Op. at 2426.

Indeed, in *Clymer* we referred to the total number of days (excludable and non-excludable) between the defendant's indictment and his trial in stating that the "sheer length" of this *total* period "weigh[ed] heavily in favor of a dismissal with prejudice." 25 F.3d at 831-32. But we expressly declined to make the distinction between excludable and non-excludable days which the majority now determines is required. Rather, after holding that the Speedy Trial Act had been violated, we simply remanded to the district court without unnecessary further calculations. 25 F.3d at 832 ("Even giving the government the benefit of every doubt, about five months of this period was not excludable under the Act. *Were we forced to decide how much of the delay is actually excludable*, we might conclude that the non-excludable delay is considerably more than that.") (emphasis added). Thus, our decision in *Clymer* firmly supports the conclusion that § 3162(a)(2) does not require a calculation of the total number of excludable and non-excludable days before a court may decide whether to dismiss with or without prejudice. As such, I believe the district court cannot abuse its discretion by failing to recite such calculations.

The majority notes that on remand, Lewis asked the district court to make specific findings as to whether each period of delay he challenged was excludable under the Act, Maj. Op. at 2425, and labels the district court's failure to do so a "misconstruction of our mandate" in *Lewis I*, *id.* at 2426. But the trial judge made precisely such findings before Lewis's first trial, deeming all such periods excludable. In *Lewis I*, we held that the district court erred with respect to one 117-day period, but we never implied that this error tainted its findings with respect to the other periods. As such, I do not believe it was necessary for the trial judge to reconstruct its prior work on remand. Indeed, such an exercise would be redundant. When Lewis requested that the district court reissue specific

findings on these other periods, the court acknowledged its previous conclusions and declined to revisit them. I find nothing in the Speedy Trial Act or our decision in *Lewis I* to prohibit such a course of action.

Since § 3162(a)(2) does not require the calculation the majority demands, the next question is whether the district court abused its discretion in weighing the statutory factors.

## III

### A

Section 3162(a)(2) lists three factors, "among others," which a court must consider in deciding whether to dismiss an indictment with or without prejudice, and the Supreme Court has held that prejudice is a fourth. *Taylor*, 487 U.S. at 334. As I view the record in this case, the district court considered each of these factors at length. It first acknowledged that Lewis was prejudiced as a result of the delay. Specifically, the district court explained that Lewis lost the opportunity to be represented by the counsel of his choice when his first attorney withdrew to accept a position with the International War Crimes Tribunal in the Netherlands after the 117-day non-excludable delay had occurred. The district court appropriately defined the right to one's counsel of choice as a "hallmark of our system of justice" and reasoned that Lewis's loss weighed in favor of dismissal with prejudice.

And then it considered the other § 3162(a)(2) factors. As such, the district court examined the severity of the offenses with which Lewis was charged: one count of money laundering in violation of 18 U.S.C. § 1956, two counts of conspiracy in violation of 18 U.S.C. § 371, six counts of smuggling merchandise into the United States in violation of 18 U.S.C. § 545, and nine counts of illegal importation and false labeling of wildlife in violation of 16 U.S.C. § 3372. Noting that a conspiracy requires the assistance of multiple parties, that

the smuggling conduct with which Lewis was charged contra-
vened international treaties, and that a high number of animals
were involved in Lewis's scheme, the district court deter-
mined that this combination of offenses was "serious" and
that their severity weighed in favor of dismissal without prej-
udice.

Finally, the district court considered the third factor: the
impact of a reprosecution on the administration of the Speedy
Trial Act and the administration of justice. In reasoning that
such factor weighed in favor of dismissal without prejudice,
the district court noted two important facts: First, Lewis was
not incarcerated during the time of pretrial delay and, second,
Lewis was charged with playing a central, rather than a
peripheral, role in the crimes alleged.

B

The district court balanced the prejudice Lewis suffered
against the consequences of reprosecution and the severity of
his offenses and concluded that a dismissal without prejudice
was the appropriate remedy. Based on the record before us, I
cannot conclude that the district court abused its discretion in
reaching such a decision. It considered each factor enumer-
ated in § 3162(a)(2) with care. The offenses with which Lewis
was charged, money laundering, conspiracy, smuggling, and
illegal importation and false labeling of wildlife, are indeed
serious offenses in their own right and are even more so when
combined. In addition, it reasonably concluded that the conse-
quences of reprosecution would not be severe. The district
court was guided by *Clymer*, where we determined that the
consequences of reprosecution weighed in favor of dismissal
with prejudice where the defendant was "incarcerated for the
entire pretrial period." 25 F.3d at 832. Lewis, on the other
hand, has remained out of prison for the duration. The defen-
dant in *Clymer* as a "relatively minor figure" in the criminal
enterprise alleged in that case, *id.* at 826, whereas Lewis was
charged as a central player here. In such circumstances, I

believe the district court was well within its discretion to conclude that reprosecution would not conflict with the ends of justice.

Of course, the district court acknowledged that Lewis suffered prejudice from the loss of his counsel of choice and that this factor weighed in favor of dismissal with prejudice. Yet the majority seems to conclude that the district court's failure to quantify the precise number of days which were not excludable under the Act caused it to undervalue the degree of prejudice Lewis suffered. I simply cannot discern what relevance this calculation would have had in the district court's analysis. The prejudice Lewis suffered was a direct result of the 117-day delay. Whether or not other periods were also non-excludable would neither have added to nor subtracted from this harm. Without the 117-day delay, Lewis's trial would have begun before the date his counsel departed.

While the loss of his first attorney is not the only prejudice Lewis alleges (the general burden of an indictment looming over one's head is not to be discounted), it is certainly his greatest. Because the addition of other non-excludable periods would not have added to this harm, I cannot conclude that the district court abused its discretion in failing to perform additional calculations, nor can I conclude that it abused its discretion in finding that the prejudice Lewis suffered was not so great as to overwhelm the minimal consequences of reprosecution and the severity of Lewis's offenses.

Lewis was granted a continuance to allow his new counsel to prepare for trial. He was charged as a central figure in the commission of serious offenses, and was not incarcerated during the pre-trial delay. The district court explained as much in a reasoned decision, considering all factors required by § 3162(a)(2). In this area of the law, we do not engage in *de novo* review; I cannot conclude that the bounds of discretion were exceeded here.