**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

v.

BEAU LEE LEWIS,
　　　　　*Defendant-Appellant.*

No. 09-10058

D.C. No.
3:04-cr-00217-PJH

OPINION

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

Argued and Submitted
December 7, 2009—San Francisco, California

Filed July 20, 2010

Before: A. Wallace Tashima, Susan P. Graber, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Graber

10337

**COUNSEL**

Allen M. Brabender, United States Department of Justice, Environment and Natural Resources Division, Washington, D.C., for the plaintiff-appellee.

Dean D. Paik, Rogers Joseph O'Donnell, San Francisco, California, for the defendant-appellant.

**OPINION**

GRABER, Circuit Judge:

Defendant Beau Lee Lewis appeals the district court's decision to dismiss his indictment for violation of the Speedy Trial Act, 18 U.S.C. § 3161, without prejudice. We affirm.

BACKGROUND

Defendant's several felony convictions relate to an international conspiracy to smuggle protected wildlife into the United States. This is Defendant's third appeal; our earlier opinions detail the underlying facts, which we need not repeat here. *United States v. Lewis*, 349 F.3d 1116 (9th Cir. 2003) (per curiam) ("*Lewis I*"); *United States v. Lewis*, 518 F.3d 1171 (9th Cir. 2008) ("*Lewis II*").

In *Lewis I*, we identified a Speedy Trial Act violation because of a 117-day period of pretrial delay from January 13 to May 9, 2000, and remanded for the district court to decide whether dismissal should be with or without prejudice. 349 F.3d at 1121-22. On remand, the court considered only that period of delay and decided that dismissal should be without prejudice. After re-indictment and a second trial resulted in the present convictions, Defendant appealed again. In *Lewis II*, we reversed and remanded once more, because the district court should have considered all periods of delay, not just the period discussed in *Lewis I*. *Lewis II*, 518 F.3d at 1176.

Following the second remand, the case was reassigned to another judge, who considered all periods of delay and decided the remaining issues in two stages. First, in an order dated December 10, 2008, the district court held that, "at most, 145 days was not excludable" but that, if the court "were permitted by the Ninth Circuit's remand order to consider the § 3161(h)([6]) grounds for exclusion with respect to the January 13, 2000-May 9, 2000 period, it would find that 117-day period is indeed excludable under § 3161(h)([6])." The court further stated that, "[i]f that were the case, then no [Speedy Trial Act] violation would have occurred because only 28 days would have passed untolled." If the court were "not permitted to revisit the 117-day period ruled on by the Ninth Circuit, then [a Speedy Trial Act] violation would indeed have occurred, warranting dismissal of the superseding indictment, and this court is thus required to consider whether or not the dismissal should be with or without prejudice." The district court then directed the parties to assume that 145 days went untolled under the Speedy Trial Act and ordered them to file briefs addressing whether the dismissal should be with or without prejudice.

The district court issued a second order on February 2, 2009, holding that the indictment should be dismissed without prejudice. In its analysis, the court held that Defendant's offenses were "serious" under 18 U.S.C. § 3162(a)(2), that the

delays were not the result of neglect or bad faith, that penalizing the government by dismissing with prejudice is not warranted, and that the delay prejudiced Defendant only slightly. Thus, finding "that three of the four factors favor the government, while one tips only slightly in Defendant's favor," the district court dismissed the indictment without prejudice. Defendant timely appeals.

## STANDARDS OF REVIEW

We review de novo a district court's application of, and questions of law arising under, the Speedy Trial Act. *United States v. George*, 85 F.3d 1433, 1436 (9th Cir. 1996); *United States v. Springer*, 51 F.3d 861, 864 (9th Cir. 1995). We review for abuse of discretion a district court's decision to dismiss an indictment without prejudice for a violation of the Speedy Trial Act. *United States v. Taylor*, 487 U.S. 326, 332 (1988). We review the district court's findings of fact for clear error. *Id.* at 337.

## DISCUSSION

A. *Excludable Periods of Delay*

[1] The Speedy Trial Act generally requires that trial begin within 70 days of a defendant's indictment or first appearance before a judicial officer, whichever occurs later. 18 U.S.C. § 3161(c)(1). If trial does not begin within the requisite time period and the defendant moves for dismissal before trial, the court must dismiss the indictment, either with or without prejudice. *Id.* § 3162(a)(2). But other provisions of the Speedy Trial Act allow for tolling of the 70-day limit in specified circumstances. One such provision permits the district court to exclude "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." *Id.* § 3161(h)(1)(D). Another provision excludes a "reasonable period of delay when the defendant is joined for trial with a

codefendant as to whom the time for trial has not run and no motion for severance has been granted." *Id.* § 3161(h)(6).[1]

**[2]** Section 3161(h)(7) excludes delays resulting from a continuance when the court finds that the "ends of justice served by taking [that] action outweigh the . . . interest of the public and the defendant in a speedy trial." The factors, among others, that a court must consider in deciding whether to grant a continuance under this section are:

> (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

> (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

> . . . .

> (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

---

[1]In this appeal, Defendant does not dispute the propriety of trying him jointly with his codefendants.

*Id.* § 3161(h)(7)(B).

For clarity, we will divide the contested periods of delay into four parts.

1. *May 6, 1999 - July 29, 1999*

**[3]** The district court held that the period from May 6, 1999, through July 28, 1999, was excludable under 18 U.S.C. § 3161(h)(7) because of the complexity of the case. A district court must satisfy two requirements when it grants an "ends of justice" continuance under § 3161(h)(7): "(1) the continuance must be specifically limited in time; and (2) it must be justified on the record with reference to the facts as of the time the delay is ordered." *United States v. Lloyd*, 125 F.3d 1263, 1268 (9th Cir. 1997) (internal quotation marks and brackets omitted). The court

> must conduct an appropriate inquiry to determine whether the various parties actually want and need a continuance, how long a delay is actually required, what adjustments can be made with respect to the trial calendars or other plans of counsel, and whether granting the requested continuance would "outweigh the best interest of the public and the defendants in a speedy trial."

*Id.* at 1269 (brackets omitted) (quoting 18 U.S.C. § 3161(h)(7)(A)).

**[4]** Defendant's case was joined with those of several codefendants, and there were ongoing investigations in Arizona and Texas. *Id.* Where defendants are properly joined for trial, as here, the case's complexity necessarily must be assessed with reference to the joint trial. *United States v. Daychild*, 357 F.3d 1082, 1091 (9th Cir. 2004). This case involved voluminous discovery, a large number of counts, several defendants, ongoing investigations in other districts,

and potential witnesses from other countries. We have upheld "ends of justice" continuances because of complexity in similar circumstances. *See, e.g.*, *United States v. Dota*, 33 F.3d 1179, 1183 (9th Cir. 1994) (holding that an "ends-of-justice continuance may be justified on grounds that one side needs more time to prepare for trial"); *United States v. Butz*, 982 F.2d 1378, 1381 (9th Cir. 1993) (holding that an "ends of justice" continuance is proper when a case is complex and involves multiple "codefendants and multiple overt acts occurring in [multiple] states," and in which the complexity "outweigh[s] the interests of individual defendants").

[5] Defendant agrees that the case is complex, but argues that a § 3161(h)(7) exclusion also must be analyzed separately under § 3161(h)(6) for reasonableness. Defendant is correct. Our precedent instructs us that, in order to attribute a codefendant's excludable delay under § 3161(h)(7) to a defendant, the delay must meet the reasonableness requirement of § 3161(h)(6)[2]. *See United States v. Messer*, 197 F.3d 330, 336 (9th Cir. 1999) ("The attribution of delay to a codefendant . . . is limited by a reasonableness requirement . . . ."); *Butz*, 982 F.2d at 1381-82 ("To resolve Butz's speedy trial claim, we must determine whether the court properly granted the continuance and whether applying this excludable time to Butz made the resulting delay reasonable.").

[6] Relying on this premise, Defendant then asserts that the

---

[2]Although the Supreme Court has never held that a delay attributed to a codefendant must be reasonable in order to exclude that time from a defendant's speedy trial clock, it has held that subsections of § 3161 may need to be analyzed together before properly excluding a period of delay. *See Bloate v. United States*, 130 S. Ct. 1345 (2010) (holding that the time granted to prepare pretrial motions is not automatically excludable under § 3161(h)(1), but may be excluded only when a court grants a continuance based on appropriate findings under § 3161(h)(7)). Thus, our circuit's precedent requiring that § 3161(h)(7) be read in conjunction with § 3161(h)(6) with regard to delays that are attributed to a codefendant comports with Supreme Court precedent.

district court failed to make the required reasonableness finding for the period May 6, 1999, to July 29, 1999. Defendant is mistaken. During the May 6, 1999, hearing, the district court stated: "[I]t seems to the court that ninety days would be a reasonable time frame to exclude time further . . . ." The district court's finding of reasonableness was not clearly erroneous. The court found that 90 days would be the "outer boundary" of a reasonable delay for joinder, given the government's diligent efforts to obtain the wildlife dealer's presence and the minimal prejudice to Defendant. Thus, we hold that the period May 6, 1999, to July 29, 1999—less than 90 days—was properly excluded from Defendant's speedy trial clock.

2. *July 29, 1999 - September 16, 1999*

**[7]** The district court held that the period from July 29, 1999, through September 15, 1999, is excludable under both § 3161(h)(6) and 3161(h)(7). During this period, the government filed a second superseding indictment, which added two codefendants to the case. "Generally speaking, defendants jointly charged are to be jointly tried." *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980). Reasons for jointly trying joined defendants include these:

> It would impair both the efficiency and the fairness of the criminal justice system to require, in all these cases of joint crimes . . ., that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand.

*Richardson v. Marsh*, 481 U.S. 200, 210 (1987).

**[8]** Because Defendant was to be tried jointly with his codefendants, the district court properly granted a continu-

ance. An already complex case became more complicated because of the additional defendants and the need to determine their counsels' and the government's readiness for trial. Thus, this period meets the requirements for excludability under § 3161(h)(7), but we also must determine whether this delay was reasonable.

**[9]** We "gauge the reasonableness of delay on a case by case basis, given the fact-bound nature of the inquiry." *Messer*, 197 F.3d at 337 (internal quotation marks omitted). Here, the addition of two codefendants made the delay reasonable and, hence, excludable under § 3161(h)(6).

Defendant complains that the delay deprived him of his counsel of choice. Had the trial commenced when originally scheduled, his original lawyer would have represented him. Instead, Defendant was represented at trial by a different lawyer because the first lawyer had work obligations abroad. But Defendant had an opportunity to go to trial with the first lawyer by severing his case from those of his codefendants. He deliberately chose not to do so, knowing that trial would commence after the original lawyer was set to leave the country. More importantly, Defendant fails to identify any actual prejudice that occurred as a result of being represented by other counsel, who mounted a highly competent and vigorous defense. Finally, Defendant has been represented by appointed counsel throughout this case, and "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006); *see also United States v. Ensign*, 491 F.3d 1109, 1113 (9th Cir. 2007) (same).

Defendant next argues that he was prejudiced because the delay gave the government time to secure Anson Wong, the wildlife dealer, and Jeffrey Miller, a codefendant who eventually pleaded guilty, as witnesses against him. Defendant's arguments do not persuade us.

Wong did not testify. Defendant could not have suffered any actual prejudice as to him.

**[10]** Miller did testify against Defendant, but we conclude that the addition of his testimony, although prejudicial, did not make the delay unreasonable. In *United States v. Hall*, 181 F.3d 1057 (9th Cir. 1999), we held that the defendant suffered prejudice under the Speedy Trial Act when the court granted extensions of time to the government for the "primary purpose" of allowing the only codefendant—who eventually testified against the defendant—to "pursue plea negotiations with the government." *Id.* at 1062. In spite of that prejudice, however, we conclude that the six-week delay at issue here was reasonable. First, there is no evidence that, here, the continuance was granted for the primary purpose of allowing Miller to pursue plea negotiations with the government. More importantly, this case involved several codefendants, most of whom did *not* testify against Lewis. An extension of time under these circumstances was reasonable because the importance of allowing Lewis' codefendants time to prepare for trial furthered the policy of favoring joint trials, *see Marsh*, 481 U.S. at 210, and, thus, outweighed any prejudice that may have resulted from having one of those codefendants eventually decide to plead guilty and testify against Lewis.

3. *September 16, 1999 - December 13, 1999*

The district court held that this period of delay was excludable under § 3161(h)(6) and (7). We agree.

At a September 16, 1999 hearing, Defendant reiterated that he would not file a motion to sever or any other motion. He said that he was ready to try the case. Counsel for a codefendant, however, said that the codefendant would file pretrial motions, including a motion to sever. The district court set a hearing on those motions for a date four months later.

**[11]** It was reasonable for the court to delay trial in order to allow the codefendant to file pretrial motions. Commencing

trial four days later, as Defendant wished, would have prejudiced his codefendants and the government because they would have had only one month of trial preparation since the time of the second superseding indictment. Additionally, because one of the codefendant's pretrial motions was to be a motion to sever, it would not have been an efficient use of judicial resources to begin trial for the joined defendants, only to have one or more codefendants severed. In short, it was reasonable for the district court to delay the trial date in order to give the codefendants and the government sufficient time to prepare.

### 4. *January 13, 2000 - May 9, 2000*

**[12]** We held in *Lewis I* that the delay that occurred between January 13, 2000, and May 9, 2000, was non-excludable. We came to that conclusion after holding that the only reason for the delay was a pending government motion to present testimony by George Morrison, the special agent who spearheaded the government's investigation, non-sequentially. *Lewis I*, 349 F.3d at 1119-20. We did not revisit that holding in *Lewis II*; rather, we remanded the case to the district court in order to review all periods of delay, not just the 117 days, when deciding whether to dismiss the case with or without prejudice.

The question now arises whether we are bound by our holding in *Lewis I*. The district court after the second remand suggested, and the government argues, that our analysis concerning excludability was wrong.

"Law of the case is a jurisprudential doctrine under which an appellate court does not reconsider matters resolved on a prior appeal." *Jeffries v. Wood*, 114 F.3d 1484, 1488-89 (9th Cir. 1997) (en banc). "The law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case." *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*,

77 F.3d 278, 281 (9th Cir. 1996) (internal quotation marks omitted). "[U]nder the 'law of the case' doctrine one panel of an appellate court will not as a general rule reconsider questions which another panel has decided on a prior appeal in the same case." *Kimball v. Callahan*, 590 F.2d 768, 771 (9th Cir. 1979).

**[13]** Law of the case is a discretionary doctrine: It "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messinger v. Anderson*, 225 U.S. 436, 444 (1912). That discretion, however, is limited. *Thomas v. Bible*, 983 F.2d 152, 155 (9th Cir. 1993). The prior decision should be followed unless: "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *In re Rainbow Magazine*, 77 F.3d at 281 (internal quotation marks omitted).

**[14]** None of those factors exists here. Our decision in *Lewis I* is not clearly erroneous, intervening controlling authority did not arise, and no additional (much less "substantially different") evidence came to light. Therefore, we decline to revisit *Lewis I*. This period of delay is non-excludable.

5.   *Summary*

The delay from May 6, 1999, to July 29, 1999, is excludable under § 3161(h)(7) because of the case's complexity, and that delay is reasonable under § 3161(h)(6).

The delays from July 29, 1999, to December 13, 1999, are excludable under § 3161(h)(6) and (7). The delays were reasonably required to facilitate the efficient use of judicial resources by enabling a joint trial and were justified by "the ends of justice" because of the case's complexity.

The delays from January 13, 2000, to July 9, 2000, are non-excludable, as *Lewis I* held.

### B.  *Dismissal Without Prejudice*

**[15]** While a Speedy Trial Act violation requires the dismissal of the indictment upon the defendant's motion, 18 U.S.C. § 3162(a)(2), whether to dismiss with or without prejudice is left to the "guided discretion of the district court," *Taylor*, 487 U.S. at 334-35. The statute does not prefer one remedy to the other. *Id.*

**[16]** The Speedy Trial Act sets forth three factors, "among others," that must be considered in deciding whether to dismiss with or without prejudice: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2). The Supreme Court has held that the phrase "among others" incorporates prejudice to the defendant. *Taylor*, 487 U.S. at 333-34.

Our role is not to substitute our judgment for that of the district court, but rather is to ensure that the district court "carefully consider[ed]" the statutory factors and "clearly articulat[ed] their effect" in the case. *Id.* at 336. "[W]hen the statutory factors are properly considered, and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed." *Id.* at 337.

Here, the district court reviewed the statutory factors in considerable detail, independent of the first judge's earlier analysis, made factual findings for the second time, and determined that the overall balance weighed in favor of dismissing the indictment without prejudice for the second time. Defendant disagrees with the district court's balancing of the statutory factors, but mere disagreement does not demonstrate an

abuse of discretion. *See Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 793-95 (9th Cir. 2005) (per curiam).

**[17]** First, in considering the seriousness of Defendant's offenses, the district court found that his offenses were "serious" or "very serious" because, among other things, the jury convicted Defendant of several felonies that carried substantial penalties. Among those offenses were conspiracy, which involved the cooperation of several parties, and smuggling offenses that implicated international treaties and involved a large number of protected animals. We agree with the district court that Defendant's offenses were serious: In the first trial, the jury convicted Defendant of 17 felonies, each carrying a maximum penalty of five years' imprisonment and a $250,000 fine, and one felony (money laundering) carrying a maximum penalty of 20 years' imprisonment and a $500,000 fine. Those convictions rested on Defendant's intentional importation, for the purpose of resale, of six illegal shipments of protected reptiles, containing 125 animals, many of which died in transit. In the second trial, the jury found Defendant guilty of a subset of six of the original felony counts, which carried maximum penalties of five years each. Defendant's offenses are "serious" within the context of the Speedy Trial Act and the standards established by courts that have addressed this issue. *See United States v. Kramer*, 827 F.2d 1174, 1176-77 (8th Cir. 1987) (citation omitted) (holding that crimes of bank fraud, punishable by up to five years' imprisonment each, were a "serious offense" for Speedy Trial Act purposes); *United States v. Salgado-Hernandez*, 790 F.2d 1265, 1268 (5th Cir. 1986) (citation omitted) (holding that alien smuggling offenses, punishable by up to five years' imprisonment each, were a "serious offense" for Speedy Trial Act purposes); *United States v. King*, 664 F.2d 1171, 1173 (10th Cir. 1981) (holding that a potential prison sentence of up to five years was "clearly serious").

**[18]** As to the second and third factors, the district court found that the government and the court itself had acted in

good faith. Their desire to facilitate the efficient use of judicial resources through a joint trial was genuine and reasonable. The case was complex and appropriately demanded considerable preparation by all parties. The district court's findings are not clearly erroneous.

Finally, with respect to prejudice to Defendant, the district court concluded that Defendant's loss of his original trial counsel was "significant," but the court found that he did not suffer any actual prejudice from his first lawyer's departure. The record supports that finding. Present counsel has represented Defendant since mid-2000, through two lengthy trials, a substantial motions practice, and now three appeals. At no time has Defendant complained about his present counsel's effectiveness or quality. Where Defendant himself identifies no actual prejudice caused by the delay, the district court properly found that this factor "tips only slightly in favor of [Defendant]."

**[19]** The district court balanced the applicable statutory considerations, made the requisite factual findings, and determined that the overall weight of the statutory considerations favored dismissal without prejudice. "[T]he district court's judgment of how opposing considerations balance should not lightly be disturbed." *Taylor*, 487 U.S. at 337. We discern no reason to overturn the district court's dismissal of the indictment without prejudice.

AFFIRMED.